UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARCHIE BELL, | § | |
|     *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION H-11-3327 |
| | § | |
| PHILADELPHIA INTERNATIONAL | § | |
| RECORDS, *ET AL.*, | § | |
|     *Defendants.* | § | |

## OPINION ON SUMMARY JUDGMENT

This dispute is before the court on defendants' motion for summary judgment (Dkt. 74). After consideration of the parties' submissions, argument at a hearing on September 30, 2013, and the law, the motion is granted.[1]

### Background

Plaintiff Archie Bell is a recording artist who in 1968 had a hit song called "Tighten Up" with his group Archie Bell & The Drells. "Tighten Up" was recorded on the Ovide Records label, which subsequently sold its song catalog to Atlantic Records. Neither Ovide or Atlantic are defendants in this case.

In 1974, Bell signed a recording contract with defendant Gamble-Huff Productions, Inc. Under the contract all expenses Gamble-Huff incurred in making Bell's records would be considered advances and charged against any royalties earned by the artist. Thus, Bell would not be entitled to royalty payments until all advances were recouped by defendants.

---

[1] In light of this ruling, defendants' motion to strike plaintiff's experts (Dkt. 78) will be terminated as moot.

Bell alleges he signed without benefit of legal counsel and after only a few minutes to review the contract, and relied on defendants' representations that they would do everything a record company was supposed to do to ensure his success and pay him royalties. Bell recorded four albums for Gamble-Huff.

In his complaint, Bell asserts causes of action against defendants for breach of contract, fraud, fraudulent inducement, fraudulent concealment, misappropriation of name, image, and likeness, and breach of fiduciary duty. Bell seeks damages, as well as the equitable remedy of return of all master recordings he made with defendants.

Defendants move for summary judgment on the grounds that Bell's claims are time-barred, and that they do not owe Bell any royalties because his records were not successful and defendants have not recovered the money they spent making them.[2]

## Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish*

---

[2]   Defendants also asserted a counterclaim in the nature of indemnity against Bell. Counsel has informed the court that defendants agree to voluntarily dismiss that counterclaim, and it is dismissed.

*Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002). In determining whether a genuine issue of material fact exists, the court views the evidence[3] and draws inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## Analysis

**Statute of Limitations**

Defendants contend that Bell's claims are barred by applicable statutes of limitations. There is no dispute that Texas law governs the statute of limitations analysis. *See Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 708 (N.D. Tex. 2011). The general rule is that a cause of action accrues, and the statute of limitations begins to run, "when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Determining when a cause of action accrues is normally a question of law. *Id.*

***Breach of Contract***. The statute of limitations for breach of contract is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). "It is well-settled law that a breach of contract claim accrues when the contract is breached." *Stine*, 80 S.W.3d at 592. According to the second amended complaint, defendants allegedly breached the contract in two ways, first by not adequately promoting the group and its recordings, and second by not remitting royalties.

---

[3] Bell's objections to defendants' citations to wikipedia.com and other internet sites, such as www.rockhall.com, are sustained as hearsay. Bell's objections to the affidavit of Jeff Hubbard are overruled.

It is clear that the first type of breach of contract claim is time-barred. Bell made no recordings for defendants after 1980 or 1981.[4] Any failure to promote defendants' recordings occurred, and would have been well known to Bell, long before 2007.

As to the royalty claim, a breach of contract claim accrues every time a royalty payment is due but not paid. *Lyle v. Jane Guinn Revocable Trust*, 365 S.W.3d 341, 355 (Tex. App. – Houston [1st Dist.] 2010, pet. denied) (if the terms of an agreement call for periodic payments, a cause of action for such payments may arise at the end of each period for which payment is due). Bell filed this lawsuit on September 9, 2011. Applying the general rules above, Bell's breach of contract claim is barred as to all royalty payments due on or before September 8, 2007. But Bell argues that the general rules do not apply, and that the accrual of his cause of action was tolled by the "discovery rule" and/or defendants' fraudulent concealment of facts.

In Texas, the discovery rule is a very limited exception to limitations and is strictly construed by courts. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). The discovery rule applies only when: (1) the nature of the injury is inherently undiscoverable and (2) the evidence of the injury is objectively verifiable. *Id.*; *Wagner v. Brown,* 58 S.W.3d 732, 734 (Tex. 2001). An "inherently undiscoverable" injury is one that by its nature is unlikely to be discovered within the prescribed limitations period, despite the plaintiff's due diligence. *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). It does not matter that a particular plaintiff did not discover his particular injury within the limitations period.

---

[4]  Dkt. 74-2 at 6-7; Dkt. 74-8 at 8; Dkt. 74-19.

*Wagner*, 58 S.W.3d at 734. Whether an injury is inherently undiscoverable is a legal question and is determined on a categorical basis. *Id.* at 735.

Bell's lack of education and sophistication and his trust in defendants may explain why he did not investigate his rights under the contract sooner. But these traits do not make defendants' alleged breaches "inherently undiscoverable." The earliest royalty statement in the record, for the period ended December 31, 1988, indicates a deficit of over $240,000 and royalty income of only $3.73.[5] Through the exercise of due diligence, Bell could have discovered any deficiencies in his royalty payments as they occurred, and at least by December 1988.[6]

Closely related to the discovery rule is the doctrine of fraudulent concealment. Unlike the discovery rule, fraudulent concealment is an equitable doctrine that is fact-specific. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). To invoke this exception, Bell must show that the defendants "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong." *Id.* Even then, "[f]raudulent concealment only tolls the statute of limitations until 'the fraud is discovered, or could have been discovered with

---

[5] D. Ex. 20, Dkt 74-21. Defendants contend they have never paid Bell royalties, which is consistent with Bell's deposition testimony. Dkt. 74-2 at 11. In his affidavit, Bell contends that he received royalties for several years and then they abruptly stopped. Dkt. 89-1, ¶ 11. If so, then the cessation of payments, which apparently occurred at least by 1988 based on the statements in the record, triggered accrual of his cause of action.

[6] Defendants contend that Bell hired Jeff Hubbard in 1995 to conduct this very due diligence. *See* Dkt. 74-11. Whether or not that is true, Bell surely could have hired someone for that purpose.

reasonable diligence.'" *Id.* (quoting *B.P. Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011)).

There is no evidence here that defendants undertook to conceal from Bell that he was owed royalties. The record indicates that defendants regularly provided Bell with statements showing the negative balance on his royalty account. The Texas Supreme Court ruled in *Shell Oil* that "the fraudulent concealment doctrine does not apply to extend limitations as a matter of law when the royalty underpayments could have been discovered from readily accessible and publicly available information before the limitations period expired." 356 S.W.3d at 925. While there is no evidence in this case that the information regarding the amount of royalties due to Bell was publicly available, the court nonetheless finds inescapable the conclusion that Bell could have discovered his alleged injury years ago with reasonable diligence.

In sum, the general statute of limitations rules governing a breach of contract cause of action apply in this case. Bell's breach of contract cause of action is time-barred as to any claims for royalties due on or before September 8, 2007. Bell's breach of contract claim regarding royalties due after that date is timely, and will be considered on the merits.

***Fraudulent inducement.*** The statute of limitations on a fraudulent inducement cause of action is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4). The alleged fraudulent representations underlying this claim were made to Bell at the time he signed the contract in 1974.[7] Accepting those allegations as true, Bell still should have realized that at least by the late eighties when he was getting royalty statements indicating he was owed

---

7     Dkt. 46, ¶24.

6

nothing. Because this claim accrued when the fraud could first have been discovered with reasonable diligence, and does not accrue anew each time a royalty payment is missed, it is time-barred.

***Breach of fiduciary duty.*** The statute of limitations on a breach of fiduciary duty claim is also four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(5). The general rule is that the cause of action accrues when the claimant knows, or in the exercise of reasonable diligence should know, of the wrongful act and resulting injury. *Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 641 (Tex. App. – Dallas 2013, n.p.h.). Bell alleges that before the contract was and for many years thereafter, defendants represented that they were "taking care of" him and "doing right by him."[8] Bell further alleges that defendants' refusal to provide a full accounting leads to the conclusion that defendants are diverting his royalties for their own use.[9]

Setting aside the issue of whether any defendant meets the definition a fiduciary, the court concludes, as discussed above, that reasonable minds could not disagree that Bell could have discovered his alleged injury long ago through the exercise of reasonable diligence. By his own admissions, Bell either never received royalties, or stopped receiving them many years ago. The record establishes that defendants made it clear to Bell many years ago that

---

[8]   Second Amended Complaint (Dkt. 46), ¶ 16.

[9]   *Id.* ¶¶ 16-18.

7

they did not intend to pay him any royalties until they recouped advances.[10] Thus, Bell's breach of fiduciary duty claim is time-barred.

***Misappropriation of name, image, and likeness.*** This is a claim for invasion of privacy. Under Texas law, this tort is subject to a two-year statute of limitations. *Stevenson v. Koutzarov*, 795 S.W.2d 313, 319 (Tex. App. – Houston [1st Dist.] 1990, writ denied). Defendants contend that this action accrued at the time of contracting and is time-barred. Bell has presented no evidence, or argument, from which the court can deduce a basis for accrual of the cause of action within the two year limitations period. It is apparently Bell's contention that the contract is unenforceable and thus defendants never had a right to use his name, image, or likeness in any way. Again, any such cause of action should have been known to Bell through the exercise of reasonable diligence long ago, and in any event more than two years before he filed suit. This cause of action is also time-barred.

**Merits of Breach of Contract Claim.**

The substantive law of New York applies to the merits analysis pursuant to the choice of law provision of the 1974 contract. Dkt. 46-1, ¶ 25. As an initial matter, the court holds that Bell cannot assert a breach of contract claim against non-contracting parties. *M. Paladino, Inc. v. Lucchese & Son Contr. Corp.,* 669 N.Y.S.2d 318, 319 (2d Dept. 1998). Gamble-Huff Productions, Inc. signed the contract, and shortly thereafter, in December 1975,

---

[10] *See* Dkt. 74-21.

assigned its rights to Assorted Music, Inc.[11] Although all defendants apparently are affiliates, "absent a showing of complete dominion and control by one over the other, two separate companies are regarded as distinct legal entities." *See Sheridan Broadcasting Corp. v. Small,* 798 N.Y.S.2d 45, 46 (1st Dept. 2005). There is no showing of "complete dominion" here.[12] Thus, Bell can assert this claim only against Assorted Music, as Gamble-Huff's assignee.[13]

The essential elements of a breach of contract claim are the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of the contract, and resulting damages. *Morpheus Capital Advisors LLC v. UBS AG,* 962 N.Y.S.2d 82, 86 (1st Dept. 2013). Defendants contend that Bell has waived any breach of contract claim by failing to object within 6 months of receiving his royalty statements, and alternatively that Assorted Music has properly accounted for Bell's royalties.

***Contractual waiver.*** The 1974 contract provides:

> All royalty statements and all other accounts rendered by us to you hereunder shall be binding upon you and not subject to any objection by you for any reason whatsoever unless specific objection in writing, stating the basis thereof, is given to us within six (6) months from the date rendered.

Dkt. 46-1, ¶ 9(b).

Bell does not specifically address defendants' waiver argument, but appears to argue (without expressly saying so) that paragraph 9 of the contract should not be enforced because

---

[11] Dkt. 74-27.

[12] It is true that royalty statements were issued by Philadelphia International Records. While this is evidence of shared or delegated responsibility, it is not sufficient to show "complete dominion."

[13] Claims against Gamble-Huff are time-barred.

the contract is unconscionable. Bell further contends that fact questions about the amount of royalties due prohibit summary judgment.

An unconscionable contract is one that is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on one party together with contract terms that are unreasonably favorable to the other. *Emigrant Mtge. Co., Inc. v. Fitzpatrick,* 945 N.Y.S.2d 697, 699 (2d Dept. 2012); *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988). Substantive unconscionability "appear[s] in the content of the contract per se," while procedural unconscionability entails "an examination of the contract formation process and the alleged lack of meaningful choice." *Id.* Both are necessary to establish unconscionability. *Gillman*, 534 N.E.2d at 828. Bell's allegations regarding his lack of time for meaningful review, lack of legal counsel, and lack of education and sophistication go only to procedural unconscionability. *See also Dabriel, Inc. v. First Paradise Theaters Corp.*, 952 N.Y.S.2d 506, 510 (1st Dept. 2012).

The facts surrounding the execution of the contract are disputed. Memories on all sides have faded. But even if it is true that Bell traveled to Philadelphia and met alone with Gamble and Huff who put the contract in front of him only briefly and told him to sign it, it does not follow that he had no "meaningful choice." There is no evidence he was pressured to sign it immediately or told not to read it nor to consult with an attorney. Moreover, there is nothing per se unconscionable about the 6-month objection period, and Bell does not argue otherwise. The provision is unambiguous. And while other provisions in the contract might be complicated, this one is not. The court cannot rewrite the clear terms of the contract under

the guise of interpretation. *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170-71 (N.Y. 2002).

There is a potential fact question as to whether Bell timely objected to royalty statements post-September 2007. Bell's counsel did send multiple letters beginning in January 2008 indicating that Bell was investigating his royalty rights. Those letters could liberally be construed as objections to the royalty statements sent to Bell. However, even if there is a factual dispute regarding Bell's compliance with the contractual objection period, it does not defeat summary judgment because Bell cannot create a genuine issue of material fact as to defendants' lack of recoupment of over $240,000 in advances.

Bell's summary judgment affidavit states that he never received cash advances from defendants.[14] Bell's recollection is contradicted by documents in the record,[15] but even if true it is not dispositive. Defendants are entitled to recoup advances for many things, such as studio time and musicians, not just cash advances to Bell. Defendants have produced records accounting for over $190,000 in such expenses.[16] While these records may not be complete, Bell has no evidence to contradict them. And Bell has submitted no evidence that income from the recordings he made for defendants has been sufficient to trigger his right to royalties under the contract.

---

[14]   Dkt. 89-1, ¶ 10.

[15]   Dkt. 74-29.

[16]   Dkt. 74-5.

11

Bell argues that he must be entitled to money because in 2007 Assorted licensed their entire catalogue of master recordings, including those by Archie Bell & The Drells, to Sony for a lump sum advance of $2,000,000. But works by numerous artists were included in the bundle, and there is no indication as to what portion, if any, of the $2,000,000 was based on the value of Bell's work. In any event, under the terms of that 2007 contract, Assorted was required to repay the advance out of royalties which it earned as owner of the master recordings. In other words, the agreement with Sony did not alter Assorted's contracts with the various artists whose work was in the catalog.[17] Statements sent to Bell from 2007 through December 2012 show that Bell continued to receive credit for a small amount of royalties after the Sony deal.[18]

Bell further argues that there is a fact issue in this case because defendants cannot account for the difference between their current representation that they are still owed approximately $230,000, and Gamble's deposition testimony that they spent over $800,000 making his records.[19] Defendants' do not contend that they spent over $800,000 making the records. Instead, defendants contend they spent "over $200,000 out-of-pocket producing plaintiff's albums, and to date these initial costs have never been recouped."[20] Defendants rely on a 1980 letter to counsel in a garnishment action, as well as the affidavit of Asbury and

---

[17] Dkt. 74-4, ¶ 13.

[18] Dkt. 74-23.

[19] Gamble Dep., at 91-92 (Dkt 89-2).

[20] Dkt. 74 at 3.

accompanying documents.[21] Gamble's deposition testimony cannot create a fact question to save Bell's case when taking that testimony as true would only prove that the deficit on Bell's account was even greater than claimed.

The court concludes that defendants are entitled to summary judgment on the merits of Bell's breach of contract claim.

**Conclusion**

For the reasons discussed above, defendants' motion for summary judgment (Dkt. 74) is granted as to all of Plaintiff's claims.

The court will enter a separate final judgment.

Signed at Houston, Texas on October 22, 2013.

_____
Stephen Wm Smith
United States Magistrate Judge

---

[21] *See* citations in Dkt. 74 at 3.